[Crim. No. 1588. Fourth Dist. Jan. 16, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. THOMAS C. BARTLETT et al., Defendants and Respondents.

174

Stanley Mosk, Attorney General, Charles A. O'Brien, Chief Assistant Attorney General, Jack E. Goertzen and William E. James, Assistant Attorneys General, William C. Mackey, District Attorney, and Roland Wilson, Deputy District Attorney, for Plaintiff and Appellant.

S. V. O. Prichard for Defendants and Respondents.

GRIFFIN, P. J.—This action arose out of a grand jury investigation concerning certain alleged problems existing in the City of Elsinore. (See *Michaels* v. *Superior Court,* 184 Cal.App.2d 820 [7 Cal.Rptr. 858] ; *People* v. *Kegley,* 198 Cal. App.2d 501 [17 Cal.Rptr. 784].) The grand jury transcript consisted of 960 pages. There were 67 exhibits. Less than 25 pages of transcript and only one exhibit related directly to the present indictment of these defendants. The defendants were city councilmen, including the mayor, and were charged with the crime of conspiracy in that on September 8, 1959, they feloniously and knowingly conspired to "wilfully and unlawfully violate the terms and provisions of a water permit issued by the State Department of Public Health of the State of California, said permit issued in accordance with the provisions of the Health and Safety Code" in violation of section 4032 thereof. Five overt acts are charged: (1) that they met at a regular session of the city council on September 8, 1959; (2) that Councilman Macy proposed a resolution that

the water superintendent be instructed to fill the reservoir with 100 per cent mineral water; (3) that Councilman McAdams then seconded the motion; (4) that all defendant councilmen then voted "aye" on said resolution; and (5) that said councilmen on said day caused 100 per cent mineral water to flow through the water mains of the city of Elsinore in violation of the State Department of Health Water Permit.

 It should be here noted that there is no allegation in the indictment as to the terms of the alleged water permit, when it was issued, or the manner in which said alleged permit was violated. Health and Safety Code, section 4032, referred to therein, provides that:

"Every person who knowingly violates or knowingly fails to comply with any of the provisions of this chapter, or of any order of the board issued pursuant to this chapter, or who procures, aids or abets in any such violation or failure, is guilty of a misdemeanor. . . ."

On this appeal, it is conceded by the People, appellant herein, that the grand jury never had before it, in evidence, an actual or certified copy of any permit claimed to have been issued by the State Board of Health to the City of Elsinore and that before section 4032, *supra,* can be violated, there has to be, in fact, in existence an "order of the board." However, it is argued in this connection that there was sufficient showing by witnesses testifying before the grand jury as to the contents of the permit and the fact that a permit was issued. The People succinctly state that they never did advance the theory that the grand jury itself had power to take judicial notice of anything properly the subject of judicial notice, but claims here that at any stage of these proceedings, under Penal Code, section 995, the judge could, under Code of Civil Procedure, section 1875, subdivision 3, pertaining to judicial notice of public and private official acts, take judicial notice of the issuance of the permit and its contents and its judicial notice would thereby supply the necessary proof of such evidence when considering the motion. (Citing *People* v. *City of Los Angeles,* 83 Cal.App.2d 627, 647 [189 P.2d 489]; *People* v. *Stralla,* 14 Cal.2d 617 [96 P.2d 941]; *Wilson* v. *Loew's, Inc.,* 142 Cal.App.2d 183, 187 [298 P.2d 152].)

At the time of opposing the motion, appellant submitted, with his points and authorities, what appellant purported to be a certified copy of the permit, which appellant claims defendants violated, and asked the trial judge to take judicial

notice of it in his review of the evidence taken before the grand jury and upon which the indictment was founded.

Apparently the document referred to as being attached to appellant's points and authorities was read and considered by the trial judge and respective counsel. This document purported to be a conditional permit of some description. It was not marked for identification and has not been brought to this court for examination or for reference. We have examined the entire proceedings had before the trial court. The court there inquired of counsel for appellant if that was the only document upon which appellant relied as being the permit. He answered in the affirmative and read from a small portion of it which stated, ". . . permit issued on the following conditions." The court remarked that it purported to be only a letter written by the director of public health without noting any action taken by the board; that the letter stated in part:

"Permit is hereby granted to the City of Elsinore as applied for, said permit being subject to the following provisions . . . Please send us a letter indicating your acceptance of the above provisions and your intentions and ability to comply with them."

Appellant then offered to show that this was the action of the board and was in accordance with their rules and regulations, if the court would then grant a continuance for some period for this purpose. The court denied the request with the statement:

"I don't believe the document that you say is a permit is a permit . . . All that this letter is is a letter by the Director referring to the Department, not to the Board, and seems to be preliminary to the issuance of a permit."

The court refused to take judicial notice that this was the permit referred to in the indictment. It was then suggested by defendants' counsel that the permit would not come into existence until the directive of the State Board had been accepted in writing and, ". . . there is no evidence that the City of Elsinore has accepted in writing." From the record before us, we are unable to hold that we must take cognizance of the permit and its terms, particularly where the document and its terms are unknown to us and where the trial court concluded that it was conditional and not the permit alleged in the indictment.

Counsel for appellant now attaches to his opening brief in this court what purports to be a certified copy of the minutes

of the State Board of Public Health meeting of August 22, 1958, reciting:

"Mr. Reinke reviewed the matter of application of the City of Elsinore for permit to use existing works supplemented by treated Colorado River water for the distribution of domestic water to the residents of the City of Elsinore. One provision in the application is different from other permits which is:

"The City 'high fluoride' well water shall not be pumped into the distribution system unless it has been treated, or blended with an approved water supply so that the final water as delivered to the consumers will not have a concentration of fluorides in excess of 1.0 part per million;

"After discussion, Dr. Volonte moved, Dr. McClendon seconded, and the Board recommended that the City of Elsinore permit for water be issued."

He now asks this court to take judicial notice of these proceedings in passing on the merits of the order of the trial court dismissing the indictment for lack of competent evidence before the grand jury. Without the presence of the permit or a certified copy thereof claimed to have been issued and violated, judicial notice of the minute order would serve no useful purpose.

In *McPheeters* v. *Board of Medical Examiners,* 74 Cal.App.2d 46 [168 P.2d 65], this court held that although a court will take judicial notice of the records of a public agency, the court should be furnished with some official information of what those records contain. The court cannot take cognizance of facts of which it is in actual ignorance. To the same effect is *Popcorn Equipment Co.* v. *Page,* 92 Cal.App.2d 448, 454 [207 P.2d 647], where the court said:

"There is a vast difference between judicial notice and judicial knowledge. The party on whom rests the burden of establishing a fact of which the court may take judicial notice is not relieved of the necessity of bringing the fact to the knowledge of the court." (Citing cases.)

(See also Witkin, California Evidence, § 43, p. 58.)

The grand jury is not authorized to take judicial notice of public records. Code of Civil Procedure, section 1855, provides that there can be no evidence of the contents of a writing other than the writing itself, with certain exceptions. Subdivision 3 relates to *public records* and the section then goes on to declare that:

"In the cases mentioned in subdivisions three and four, a copy of the original, or of the record, must be produced;

in those mentioned in subdivisions one and two, either a copy or oral evidence of the contents."

Code of Civil Procedure, section 1937, provides:

"The original writing must be produced and proved, except as provided in sections [1855] and [1919]."

See also *Lawrence* v. *Premier Indem. Assur. Co.*, 180 Cal. 688, 697 [182 P. 431].

It is conceded that the grand jury did not have before it for consideration the permit or a copy of it. If such a permit was issued, it was in the hands of the city clerk and was available to the grand jury. ■■■ On a motion under Penal Code, section 995, the superior court *reviews the record* of the grand jury or the committing magistrate to ascertain if there is any competent evidence. It does not examine the transcript de novo to make its own determination of probable cause and it does not reweigh the evidence. (*People* v. *Platt*, 124 Cal. App.2d 123, 131 [268 P.2d 529]; *People* v. *Malki*, 181 Cal. App.2d 118, 121 [5 Cal.Rptr. 207]; *Priestley* v. *Superior Court*, 50 Cal.2d 812 [330 P.2d 39].)

■■ In the instant case, the use of "judicial notice" is urged to add to or supplement the evidence taken before the grand jury. We find no provision for such supplementation by placing, for the first time, new evidence into the record in the form of judicial notice by the trial judge, under Penal Code, section 995.

■■■ Appellant refers to certain oral testimony of witnesses taken before the grand jury as to the contents of certain water permits and application for temporary permits issued to or applied for by the City of Elsinore. The city attorney, also being investigated at the same time, testified that the City of Elsinore operated under a permit and that he did not advise the adoption of the resolution by the city council. The testimony of the defendant mayor was that he recalled that the board issued a water permit with limitation of one part per million parts fluoride on August 22, 1958, or thereabouts and that they received a letter accepting the terms of the permit and after September 8, 1959, they were informed of a violation of this permit and they were then informed of certain testing and it proved high fluoride well water. He said he and other members of the board voted for the resolution of September 8, 1959, and that pure mineral water, containing 3.6 to 3.8 fluoride to a million parts water, was thereafter turned into the lines. One of the councilmen produced a letter written by Dr. Merrill of the State Board of Health, dated August 6, 1959, directed

to all water purveyors and health officers, reciting standards on mineral quality of drinking water. It announced the board's intention to establish standards on mineral quality of such water ''after further investigation and appropriate hearings at the earliest possible date but within at least two years; and in the meantime to issue permits on the basis of accepted U.S.P.H.S. Standards and temporary permits at levels to be determined later . . .'' and levels for temporary permits would be adopted at the board meeting of September 4, 1959. It appears from his testimony that the city council, prior to September 8, 1959, applied to the board for such temporary permit. No action was taken on it so, on September 8, the resolution was passed in response to signatures of about 600 residents asking for the immediate return to mineral water.

Under Code of Civil Procedure, sections 1855 and 1937, testimony of the contents of a writing, other than the writing itself, would be incompetent. It is the rule that if the competency of the evidence supporting an indictment is challenged, it becomes a matter reviewable on motion to set aside the indictment under Penal Code, section 995, and such motion must be granted if the only evidence against defendants is hearsay or otherwise inadmissible and incompetent, leaving no evidence that a crime was committed or none to connect them with the offense charged. The corpus delicti must be established independent of defendants' admissions. (*People* v. *Byars*, 188 Cal.App.2d 794 [10 Cal.Rptr. 677]; *People* v. *Schuber*, 71 Cal.App.2d 773 [163 P.2d 498]; *In re Martinez*, 36 Cal.App.2d 687 [98 P.2d 528]; *People* v. *Platt, supra*, 124 Cal.App.2d 123; *McFarland* v. *Superior Court*, 88 Cal.App.2d 153 [198 P.2d 318].) The testimony as to the contents and conditions of the claimed permit was hearsay and incompetent evidence. A review of the entire evidence taken before the grand jury on the subject so indicates and the trial court was justified in believing there was no competent evidence supporting the charge.

We will therefore not consider other reasons cited to sustain the order, such as a claim of lack of evidence of any corrupt agreement of the city council prior to the regular meeting of the city council or that its action at that meeting in proposing and adopting a resolution did imply a prior unlawful or corrupt agreement. Counsel for defendants recites that counsel for appellant fails to point out any evidence to show a previous or any corrupt agreement of the city council, but states he

"rather, whistles softly and attempts to hurry past the burying ground of his case on appeal."

Order quashing indictment and dismissing action affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied February 9, 1962, and appellant's petition for a hearing by the Supreme Court was denied March 14, 1962.