[No. C022925. Third Dist. Oct. 31, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ST. CLAIR ZABELLE, Defendant and Appellant.

COUNSEL

Susan K. Milliken, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Roger E. Venturi and Michael J. Weinberger, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SIMS, Acting P. J.**—Following the denial of his motion to suppress (Pen. Code, § 1538.5), defendant Michael St. Clair Zabelle pleaded no contest to a charge of possession of heroin for sale. (Health & Saf. Code, § 11351.)

Sentenced to state prison, defendant appeals, contending his motion to suppress was erroneously denied. We shall affirm the judgment.

FACTS

Defendant's motion to suppress was adjudicated following a special hearing in superior court. The relevant evidence adduced upon that hearing (*People* v. *Neighbours* (1990) 223 Cal.App.3d 1115, 1119-1120 [273 Cal.Rptr. 32]) is as follows:

Inspector Lawrence Norvall, a narcotics investigator for the City of Stockton Police Department, was experienced in the area of heroin investigations.

About 4 p.m. on October 10, 1995, Norvall and his partner were in the Delta Hotel to investigate narcotics activity going on in room 100 or 101.

While walking down a common hallway of the hotel, Norvall noticed that the door to room 208 was wide open. When Norvall looked into the room from the hallway, he saw defendant seated on the bed with his face lying on a dresser at the foot of the bed. Defendant was in a fetal position, and Norvall could not see defendant's hands nor whether defendant might have anything in his hands. Defendant's eyes were closed; he appeared to be asleep.

From the hallway, Norvall observed that, above defendant's head, lying on the dresser, was a broken, jagged piece of mirror about six inches long. Several dark balls were sitting on the mirror.

Believing the black balls were heroin, Norvall walked into the room to see whether the balls were heroin and to check on the welfare of defendant, who might be overdosed.

Norvall did not say anything before entering the room to investigate because he was concerned for his safety: He could not see defendant's hands and did not know what might be in his hands. Norvall wanted to get close enough to defendant to put his hands on him.

When Norvall got to the foot of the bed, he picked up the mirror and smelled an ammonia-type smell that he associated with heroin. The officer then woke up defendant by putting his hand on defendant's shoulder. He then placed defendant under arrest.

### DISCUSSION

Defendant contends the search was unlawful because (1) the officers failed to comply with "knock-notice" requirements, and (2) the officers had insufficient justification to enter defendant's hotel room and to seize the heroin.

### I

■ Defendant contends the police officers failed to comply with "knock-notice" requirements, thereby rendering the subsequent entry and search unlawful. (See *Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 290 [78 Cal.Rptr. 504, 455 P.2d 432].)

Defendant relies on Penal Code section 844 (hereafter section 844), which provides in pertinent part: "To make an arrest . . . a peace officer may break

open the door or window of the house in which the person to be arrested is . . . after having demanded admittance and explained his purpose for which admittance is desired."

 Ordinarily, section 844 requires that police officers demand admittance and state their authority and purpose before entering a dwelling. (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 320 [82 Cal.Rptr. 348, 461 P.2d 628].) The requirement applies even where the door to the dwelling is open. (*People* v. *Bradley* (1969) 1 Cal.3d 80, 87 [81 Cal.Rptr. 457, 460 P.2d 129].) A guest room in a hotel is considered a dwelling for purposes of the Fourth Amendment. (*People* v. *Ortiz* (1995) 32 Cal.App.4th 286, 291 [38 Cal.Rptr.2d 59].)

However, in addressing defendant's contention, we have in mind that, "Relevant evidence will not be excluded unless suppression is required by the Fourth Amendment of the United States Constitution. (Cal. Const., art. I, § 28, subd. (d); *In re Lance W.* (1985) 37 Cal.3d 873, 886-887 . . . ; *People* v. *Tillery* (1989) 211 Cal.App.3d 1569, 1579 . . . .)" (*People* v. *Lepeilbet* (1992) 4 Cal.App.4th 1208, 1212-1213 [6 Cal.Rptr.2d 371].)

Just last year, in *Wilson* v. *Arkansas* (1995) 514 U.S. 927 [131 L.Ed.2d 976, 115 S.Ct. 1914], the United States Supreme Court held that the common law principle of "announcement and entry" is an element of the reasonableness inquiry under the Fourth Amendment. (*Id.* at p. __ [131 L.Ed.2d at p. 982].) The court said, "This is not to say, of course, that every entry must be preceded by an announcement. The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests. . . . [T]he common-law principle of announcement was never stated as an inflexible rule requiring announcement under all circumstances." (*Ibid.*)

The court then discussed several common law exceptions to the requirement of an announcement and concluded, "For now, we leave to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment. We simply hold that although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry." (*Id.* at p. __ [131 L.Ed.2d at p. 984].)

 In this case, the officers' duty to announce their presence was subject to a well-recognized common law exception. Thus, our Supreme Court has said, "[S]ince the demand and explanation requirements

of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased . . . . Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance." (*People* v. *Maddox* (1956) 46 Cal.2d 301, 306 [294 P.2d 6], cited with approval in *Wilson* v. *Arkansas*, *supra*, 514 U.S. at p. __ [131 L.Ed.2d at p. 984].)

Here, the potential for violence and peril to the officers would have been *increased* had the officers announced their presence at the door. The officers could not see defendant's hands and whether he might have a weapon or syringe that could be used against them. Officer Norvall limited the potential for violence by entering to a place where he could put his hands on defendant before waking him.

Considering all circumstances, the officers acted reasonably in entering the room as they did. There was no violation of the Fourth Amendment.

## II

Defendant next argues that the warrantless search of his room and the seizure of contraband violated his Fourth Amendment rights.

Defendant first contends the officers searched defendant's hotel room unlawfully when they looked through the door into the room. This contention is not meritorious. There is no dispute that the officers had a right to be present in the hotel hallway and that they did not open the door to defendant's room; rather, the door was "wide open." "Looking through a partially open door is not an illegal search. [Citation.]" (*People* v. *Boone* (1969) 2 Cal.App.3d 66, 69 [82 Cal.Rptr. 398]; see *People* v. *Ortiz*, *supra*, 32 Cal.App.4th at p. 291.)

Defendant further contends the warrantless entry into defendant's room and the seizure of narcotics was unlawful. We cannot agree. The warrantless entry into a hotel room, and the seizure of contraband in plain view therein, may be justified by exigent circumstances. (*People* v. *Ortiz*, *supra*, 32 Cal.App.4th at p. 295.) Where police officers have reason to believe a person has overdosed on heroin, the possible overdose constitutes an exigent circumstance that justifies a warrantless entry to investigate. (*People* v. *Gallegos* (1970) 13 Cal.App.3d 239, 242 [91 Cal.Rptr. 517].)

Here, of course, Officer Norvall testified one reason he entered the room was to check on the welfare of the defendant, who might have overdosed.

Defendant argues this testimony was a "ruse" to gain entry to the room. We cannot agree. Viewed objectively (*People* v. *Ortiz, supra,* 32 Cal.App.4th at p. 292), the facts were these.

Officer Norvall was experienced in the area of heroin investigations. When he looked into defendant's hotel room, he saw defendant, who appeared to be asleep, in an unusual position. Thus, defendant was sitting up with his head lying on the dresser at the foot of the bed, only inches from suspected heroin. Contrary to defendant's argument, defendant's position was not a "common" sleeping position. Rather, defendant's unusual position, with his head located inches away from suspected heroin, reasonably suggested the possibility of an overdose.

We conclude that, viewed objectively, the circumstances justified Officer Norvall's belief that defendant might have overdosed on heroin. Hence, his entry into the room to check on defendant's condition was justified by exigent circumstances (*People* v. *Gallegos, supra,* 13 Cal.App.3d at p. 242) and his seizure of the heroin in plain view was lawful. (*People* v. *Ortiz, supra,* 32 Cal.App.4th at p. 295.)

## DISPOSITION

The judgment is affirmed.

Nicholson, J., and Morrison, J., concurred.