79 Cal.Rptr.2d 519 (1998)
67 Cal.App.4th 969
The PEOPLE, Plaintiff and Appellant,
v.
James Anthony MAYS, Defendant and Respondent.
No. D028210.
Court of Appeal, Fourth District, Division One.
October 16, 1998.
Review Denied January 13, 1999.
*520 Paul J. Pfingst, District Attorney, Thomas F. McArdle and Peter J. Cross, Deputy District Attorneys, for Plaintiff and Appellant.
Plourd & Steigerwalt, Christopher J. Plourd and Beth L. Steigerwalt, San Diego, for Defendant and Respondent.
KREMER, P.J.
The People appeal an order dismissing criminal charges against James Anthony Mays after the court granted Mays's motion to suppress evidence under Penal Code[1] section 1538.5. The People contend the court erred in finding law enforcement officers failed to comply with Fourth Amendment knock-notice requirements during a parole search of Mays's home. We agree and accordingly reverse the order.

FACTUAL AND PROCEDURAL BACKGROUND
In early April 1996, Diane Weaver notified San Diego police officers that two diamond rings, one belonging to her mother-in-law Ruth Weaver, had been stolen from her home. Weaver reported that between March 23 and March 30, 1996, numerous people had been in her home doing repairs and other contract work. One of the workers was Mays, who was on parole. Mays's parole agent, Cedric Murphy, suspected Mays was involved in the theft. As a condition of his parole, Mays agreed law enforcement officers could search his residence and property without a warrant.
On April 5, 1996, Murphy and several uniformed police officers went to Mays's residence to conduct a parole search.[2] Mays's mother-in-law, Katherine Riley, heard a loud knock at the front door and heard the officers say they wanted entrance. Riley opened the door and recognized Murphy who explained there was going to be a search in accordance with the terms of Mays's parole. Riley permitted the officers to enter.
Riley said Mays was alone in the bedroom, pointing out the location. The bedroom door was closed. Without knocking on the door or announcing their presence, the officers went into the bedroom where they found Mays asleep. Mays was wearing Ruth Weaver's ring on a chain around his neck.
An amended information charged Mays with grand theft of personal property (§ 487, subd. (a)) and receiving stolen property (§ 496, subd. (a)). The information alleged Mays was presumptively ineligible for probation (§ 1203, subd. (e)(4)), had two prior convictions within the meaning of section 667.5, subdivision (b) and had six prior serious felony convictions within the meaning of section 667, subdivisions (b) through (i).
After trial, the jury was unable to reach a verdict and the court declared a mistrial. Mays then moved to suppress evidence under section 1538.5 on the ground the officers failed to comply with knock-notice requirements before entering the front door of the residence and before entering his bedroom. The court granted the suppression motion and dismissed the information under section 1385.

DISCUSSION

I

Standard of Review
In reviewing a ruling on a motion to suppress evidence, we defer to the trial court's findings of fact, whether express or implied, if those findings are supported by substantial evidence. We independently determine the relevant legal principles and apply those principles in evaluating the reasonableness of the search based on the facts as found by the trial court. (People v. Williams (1988) 45 Cal.3d 1268, 1301, 248 Cal.Rptr. *521 834, 756 P.2d 221; People v. Aguilar (1996) 48 Cal.App.4th 632, 637, 55 Cal.Rptr.2d 716.)

II

Knock-notice During Initial Entry
In support of his suppression motion, Mays argued, and the court agreed, the officers had not announced their purpose until after Riley opened the front door in response to their knocks. The People contend the court erred in finding the officers' announcement of purpose must precede the opening of the door in order to satisfy constitutional and statutory knock-notice requirements. We agree.
The term "knock-notice" refers to the requirement of section 1531[3] and its federal counterpart (18 U.S.C., § 3109) that a law enforcement officer, before entering a house to execute a search warrant, give notice of his or her authority and purpose and be refused admittance either actually or constructively. (People v. Howard (1993) 18 Cal.App.4th 1544, 1546, fn. 1, 23 Cal.Rptr.2d 212.)[4] The knock-notice requirement is part of the reasonableness inquiry under the federal constitution's Fourth Amendment guarantee against unreasonable searches and seizures. (Wilson v. Arkansas (1995) 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976; People v. Zabelle (1996) 50 Cal.App.4th 1282, 1286, 58 Cal.Rptr.2d 105.) Thus, before entering a residence, police officers must (1) knock or use other means reasonably calculated to give adequate notice of their presence to the occupants, (2) identify themselves as police officers, and (3) explain the purpose of their demand for admittance. (§ 1531; People v. Ramsey (1988) 203 Cal.App.3d 671, 680, 250 Cal.Rptr. 309; see also Duke v. Superior Court (1969) 1 Cal.3d 314, 319, 82 Cal.Rptr. 348, 461 P.2d 628 [addressing entry under section 844 requiring knock-notice to execute arrest warrant].) The identification and statement of purpose need only be given to the person apparently in control of the premises. (People v. Bencomo (1985) 171 Cal. App.3d 1005, 1018, 217 Cal.Rptr. 826.)
Here, as the trial court found, the officers stated their purpose to Riley, the owner of the residence, after she opened the door in response to their knocks. However, contrary to Mays's argument in the trial court, the officers were not required to explain the purpose of their demand for admittance before the door was opened, but only before they entered the residence. (See People v. Lamas (1991) 229 Cal.App.3d 560, 570, 282 Cal.Rptr. 296; People v. Ramsey, supra, 203 Cal.App.3d at pp. 680-681, 250 Cal.Rptr. 309.)
Mays takes a new position on appeal. Conceding the officers knocked, identified themselves and demanded entry, he contends they failed to explain their purpose before entering the residence. However, a knock-notice issue not specifically raised in the trial court is waived. (People v. Watkins (1994) 26 Cal.App.4th 19, 32, 31 Cal.Rptr.2d 452, citing People v. King (1971) 5 Cal.3d 458, 464, 96 Cal.Rptr. 464, 487 P.2d 1032.) In any event, the uncontradicted evidence shows that when Murphy and several uniformed police officers knocked on the door of Mays's residence and said they wanted entrance, Riley opened the door and recognized Murphy who explained he was there to conduct a *522 parole search. Riley stepped aside and the officers entered the house. Having announced their purpose "to a person who appeared to be in control of the premises and who authorized their entry," the officers complied with knock-notice requirements. (People v. Murphy (1974) 42 Cal.App.3d 81, 88, 116 Cal.Rptr. 889.)

III

Knock-notice at Interior Door
The People contend the court erred in finding the officers failed to comply with knock-notice requirements when they entered Mays's closed bedroom door without knocking and announcing their presence. They urge us to follow those appellate court decisions holding that knock-notice requirements do not apply at interior doors.
The issue of whether law enforcement officers must comply with knock-notice requirements at a closed inner door is not settled among appellate courts. Some courts have held knock-notice is required at inner doors as well as outer doors (People v. Webb (1973) 36 Cal.App.3d 460, 111 Cal.Rptr. 524; People v. Glasspoole (1975) 48 Cal.App.3d 668, 121 Cal.Rptr. 736; People v. Pipitone (1984) 152 Cal.App.3d 1112, 201 Cal.Rptr. 18) while others have held knock-notice applies only to initial entry to a house and need not be repeated at inner doors (People v., Livermore (1973) 30 Cal.App.3d 1073, 106 Cal.Rptr. 822; People v. Pompa (1989) 212 Cal.App.3d 1308, 261 Cal.Rptr. 417; People v. Howard, supra, 18 Cal.App.4th 1544, 23 Cal.Rptr.2d 212; People v. Aguilar, supra, 48 Cal.App.4th 632, 55 Cal.Rptr.2d 716; see also United States v. Bustamante-Gamez (9th Cir.1973) 488 F.2d 4; United States v. Crawford (9th Cir.1981) 657 F.2d 1041).
Courts requiring knock-notice at interior doors have relied primarily on statutory language referring to "any outer or inner door." (See, e.g., People v. Webb, supra, 36 Cal. App.3d at p. 465, 111 Cal.Rptr. 524.) However, the court's reasoning on this point in People v. Howard, supra, 18 Cal.App.4th at pages 1549-1550, 23 Cal.Rptr.2d 212, is both instructive and persuasive.
"If the Webb court is correct in its interpretation of `the explicit terms' of section 1531, then as a matter of consistent grammatical construction knock-notice must precede not only the `breaking] open' of `any outer or inner door or windows of a house' but also the `breaking open' of `any part of a house' as well as `anything therein.' `[A]ny part of a house' would include closets, crawl spaces, a furnace, etc. `[A]nything therein' would include everything therein which one could `break open' such as wardrobes, chests of drawers, cupboards, sideboards, bathroom and kitchen drawers, refrigerators, ovens, dishwashers, microwaves, washers, dryers, covered [bookcases], trunks, suitcases, safes, jewelry boxes, just plain boxes, items (such as television sets) which one must `break open' to locate the serial numbers, etc., etc., etc.
"... Numerous other examples, equally absurd, may easily be conjured up by even the most inert imaginations. Given that we are enjoined in construing statutes to avoid absurd consequences [citation], we believe it is more reasonable to construe section 1531's demand for knock-notice before `break[ing] open' as applying to the house itself and not its subareas and contents." (People v. Howard, supra, 18 Cal. App.4th at pp. 1549-1550, 23 Cal.Rptr.2d 212, original italics.)
Thus, the court concluded, "notice of authority and purpose, i.e., knock-notice, is required to gain admittance to a house, and once complied with, any part of the house or anything therein may be broken open as required to execute the warrant." (Id. at p. 1550, 23 Cal.Rptr.2d 212; accord People v. Aguilar, supra, 48 Cal.App.4th at p. 638, 55 Cal.Rptr.2d 716.)
The court in Howard also noted its construction of section 1531 subserved the policy of the statute to protect the privacy of individuals in their home as well as to protect the police and other innocent people by preventing violent confrontations likely to be caused by precipitous police entry. "A rule which requires officers who have complied with knock-notice at an outer door to repeat those procedures at each inner door does not protect any cognizable privacy right of the occupants. *523 At the point of entry, knock-notice clearly protects the homeowner from the outrage of having `his "castle" suddenly and violently broken into.' [Citation.] And, properly understood, it promotes `the reverence of the law for the individual's right of privacy in his own house' [citation]." (People v. Howard, supra, 18 Cal.App.4th at p. 1551, 23 Cal.Rptr.2d 212.) `"The simple fact is that a homeowner has no right to prevent officers armed with a warrant or proper grounds to make a warrantless entry from entering his home....' [Citations.] `[L]ittle if anything is gained by permitting the occupant to open the door to an entry that he cannot legally resist.' [Citation.]" (Ibid.) Thus, "to the extent a privacy interest remains to be protected, it is clearly vindicated by the requirement of knock-notice at the point of entry." (Ibid.)
Moreover, once the officers have complied with knock-notice at the initial entry, repeated knock-notice at inner doors would increase, rather than decrease, the probability of violence by giving any occupant predisposed to resist an entry by police additional time to prepare. (People v. Howard, supra, 18 Cal.App.4th at p. 1552, 23 Cal.Rptr.2d 212; United States v. Bustamante-Gamez, supra, 488 F.2d at pp. 10-11.) "Requiring police who have lawfully entered a house to announce, demand entry and await refusal at each inner door is in conflict with the statutory purpose of reducing violence." (People v. Howard, supra, 18 Cal.App.4th at p. 1553, 23 Cal.Rptr.2d 212; People v. Aguilar, supra, 48 Cal.App.4th at p. 638, 55 Cal.Rptr.2d 716.)
We agree with the holding and reasoning of the court in Howard, as well as federal decisions consistent with its analysis, that compliance with knock-notice before entering a house is sufficient and, once inside, law enforcement officers need not again comply before entering a closed inner room. Here, because the officers complied with knock-notice requirements at the front door, they were under no constitutional or statutory obligation to repeat the notice at the closed bedroom door.
Mays asserts he was nevertheless entitled to knock-notice at the closed bedroom door because he did not have notice of the initial entry. In support of this argument, he cites language from People v. Howard, supra, 18 Cal.App.4th at page 1555, 23 Cal. Rptr.2d 212, suggesting instances when repeated knock-notice may be required such as when the residence is unusually large, when the outer door does not provide access to the place to be searched under the warrant or when a single room is the only area subject to search under the terms of the warrant. However, there was no evidence Mays's residence was unusually large or that the outer door did not provide access to the place to be searched. Further, the terms of Mays's parole search waiver allowed his residence and any property under his control to be searched. Thus, his bedroom was not the only area subject to search. In any event, the initial knock-notice was properly given to Riley, the homeowner, who permitted the officers to enter and directed them to Mays's bedroom. (See People v. Bencomo, supra, 171 Cal.App.3d at p. 1018, 217 Cal.Rptr. 826.)
Because the officers complied with knock-notice requirements before entering Mays's residence to conduct a parole search, the court erred in granting Mays's motion to suppress evidence and in dismissing the criminal charges.

DISPOSITION
The order is reversed.
WORK, J., and HOWATT, J.[*], concur.
NOTES
[1] All statutory references are to the Penal Code unless otherwise specified.
[2] At the time. Mays was living with his wife in the home of his mother-in-law.
[3] Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."
[4] Although probation and parole searches do not technically fall within the provisions of section 1531, courts have consistently held that initial entries into a home by law enforcement officers to conduct a probation or parole search nevertheless must comply with the knock-notice requirements of section 1531. Some courts have based their reasoning on the similarity in purpose of all types of searches. (People v. Britton (1984) 156 Cal.App.3d 689, 698, 202 Cal.Rptr. 882; People v. LaJocies (1981) 119 Cal.App.3d 947, 952, 174 Cal.Rptr. 100.) Other courts have discussed the issue in terms of reasonableness as compelled by the Fourth Amendment. (People v. Constancio (1974) 42 Cal.App.3d 533, 542-544, 116 Cal.Rptr. 910 [probation search]; People v. Rosales (1968) 68 Cal.2d 299, 304-305, 66 Cal. Rptr. 1, 437 P.2d 489 [parole search]; see also People v. Lepeilbet (1992) 4 Cal.App.4th 1208, 1215, 6 Cal.Rptr.2d 371; People v. Gonzalez (1989) 211 Cal.App.3d 1043, 1048, 259 Cal.Rptr. 846; People v. Tacy (1987) 195 Cal.App.3d 1402, 1413, 241 Cal.Rptr. 400.)
[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.